**UNITED STATES of America ex rel. Henry L. FORD, Petitioner-Appellant,**

**v.**

**Frank J. PATE, Warden, Respondent-Appellee.**

**No. 17718.**

United States Court of Appeals, Seventh Circuit.

May 7, 1970.

---

Peter A. Flynn, Chicago, Ill., for appellant.

Thomas J. Immel, Asst. Atty. Gen., Warren K. Smoot, Chicago, Ill., William J. Scott, Atty. Gen. of State of Illinois, Chicago, Ill., Joel M. Flaum, Asst. Atty. Gen., of counsel, for appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

DUFFY, Senior Circuit Judge.

Defendant was indicted in Cook County, Illinois, for armed robbery. He pled not guilty and was tried in a bench trial before a state court. He was found guilty and was sentenced. He appealed to the Illinois Appellate Court contending 1) his identity as one of the two robbers was not proven beyond a reasonable doubt due to suggestive police practices in the lineups; 2) that he was denied due process of law; 3) that incompetent prejudicial hearsay evidence was admitted at his trial, and 4) that the trial court erred in granting defendant's motion as to excluding witnesses from the courtroom, except for the arresting officer.

The Appellate Court affirmed the conviction in People v. Ford, 89 Ill.App.2d 69, 233 N.E.2d 51 (1967). The Supreme Court of Illinois, without an opinion, refused leave to appeal. In Ford v. Illinois, 393 U.S. 942, 89 S.Ct. 310, 21 L. Ed.2d 279 (1968), the United States Supreme Court denied certiorari.

Subsequently, defendant filed a petition for a writ of habeas corpus, having been granted leave to proceed in forma pauperis. The District Judge denied and dismissed the petition, concluding that petitioner had not exhausted his state court remedies on the issue of identification, and that the alleged hearsay evidence was harmless.

The facts of the robbery and arrest are: At about 9 a. m. on May 4, 1964, Joe Karas and his son Daniel, were working in their co-owned grocery market located on North Kostner Street, Chicago. Two unmasked Negro males walked in the front door and passed Joe Karas at a distance of about four feet. When Joe Karas walked from behind the checkout counter, he was confronted by one of the men who was later pointed out as the defendant. This man pointed a gun at Joe Karas and made him lie on the floor. Daniel Karas was confronted by the other robber. As Daniel prepared one and five dollar bills for the register, the second robber demanded "Give me the money" and Daniel handed the money to the second robber.

Joe Karas later was escorted at gun point to the safe and then was forced into the meat cooler. We need not relate further details except to note that the evidence disclosed ample opportunities for Joe and Daniel Karas to clearly observe the robbers.

As Daniel Karas and the robber identified as defendant proceeded to the front of the store, they passed Olly Bird Smith in the aisle. Smith saw Daniel Karas placing loose change from the register into a small brown paper bag while being held at gunpoint by the robber identified by witnesses as the defendant.

When Smith arrived at the check-out counter, the robber identified as defend-

ant, stuck a gun in Smith's stomach and said "This is a stick-up."

After the two robbers left the market, the one identified as defendant, and his companion were seen by Billy Lane and Roy Neely driving away from the market in a blue Valiant automobile with a DB license plate.

About 8:30 a. m., prior to the robbery, on the day of the robbery, Roy Neely saw the defendant with a companion sitting in a light blue Valiant automobile while it was parked in an alley behind J & J Auto Service. The testimony was that defendant and his companion sat in the Valiant drinking Squirt and an unidentified beverage, in plain sight of Neely. They then threw the bottles and paper cups out of the car window and drove east in the alley toward Kostner Avenue where the Karas store was located.

Police who were searching the neighborhood after the robbery observed a light blue Valiant with a license plate beginning with DB, parked in an alley. Both Neely and Lane identified this auto as the one they saw driven away from the Karas market immediately following the robbery.

Defendant was arrested while entering the Valiant automobile hereinbefore described. About two hours after the robbery, defendant was returned to the store. He and three unidentified Negro males were lined up near a wall outside the market where the robbery occurred. Joe and Daniel Karas viewed these four men but no overt identification was there made. In fact, the police had instructed the witnesses not to say anything.

At several later lineups or identification sessions, Ford was positively identified as one of the robbers by Olly Bird Smith, Roy Neely and Billy Lane.

The following evening, defendant and his brother appeared in a lineup at the Fillmore Station (Chicago) along with two other male Negroes. All were of similar height and general appearance except that defendant's brother was of lighter complexion than the others. At this lineup, Joe and Daniel Karas, without hesitation, identified defendant as one of the robbers.

On this appeal, defendant Ford's principal argument is that the pretrial identification procedures were so unnecessarily suggestive as to constitute a denial of due process. We disagree!

The first lineup outside the grocery store was within two hours of the robbery. There is no proof in the record other than defendant's testimony that the three other Negro males were of a substantially different color or hue than the defendant. The same is true in the second lineup on the day after the robbery.

■ We hold that judging by the "totality of circumstances" the identification procedures were not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

■ Defendant complains that the testimony of Detective Evans that he observed Billy Lane identify defendant in a pretrial confrontation is hearsay. In view of the positive identification of defendant by four other credible eye witnesses who were at the scene of the robbery, we hold such testimony to be harmless error, not requiring automatic reversal of the conviction. Bruton v. United States, 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968).

Assuming that Detective Evans' testimony was inadmissible hearsay, it occurred during a bench trial which reduced the likelihood of prejudice. We hold the error was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967).

The Government has contended that defendant Ford has not exhausted his state remedies on the issue of the pretrial identification procedures. Since

we are unable to grant defendant relief on the merits, we need not examine the question of exhaustion of state remedies.

The order of the District Court denying the petition for habeas corpus herein and dismissing the cause is

Affirmed.