**Gilbert Arizona UTSLER, Appellant,**

v.

**Don R. ERICKSON, Warden of the South Dakota Penitentiary, Appellee.**

**No. 20511.**

United States Court of Appeals, Eighth Circuit.

April 5, 1971.

Rehearing Denied April 23, 1971.

Richard Braithwaite, Braithwaite, Cadwell & Braithwaite, Sioux Falls, S. D., for appellant.

Gordon Mydland, Atty. Gen., William J. Srstka, Jr., Asst. Atty. Gen., for appellee.

Before VAN OOSTERHOUT, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

The petitioner Gilbert Arizona Utsler, a state prisoner, appeals from a denial of his federal habeas corpus petition in the United States District Court for South Dakota.

Petitioner was arrested and convicted in a jury trial of first degree robbery on October 4, 1966, and was sentenced to ten years imprisonment in the state penitentiary. No appeal was taken from this conviction. Post conviction relief was sought in the state court on November 13, 1968, and denied. This denial of relief was upheld by the South Dakota Supreme Court. Utsler v. South Dakota, 171 N.W.2d 739 (S.D.1969).[1]

---

1. The South Dakota Supreme Court held that petitioner in this case was not constitutionally entitled to employ an expert at public expense to present the defense of "involuntary intoxication"; that preliminary interrogation of petitioner by

The District Court, the Honorable Fred J. Nichol, denied the writ, 315 F. Supp. 480, holding that the provision for appointment of experts at public expense is within the discretion of the trial court and is not a matter of right, State v. Geelan, 80 S.D. 135, 120 N.W.2d 533 (1963); the furnishing of two experts at state expense under the circumstances was sufficient; the Sixth Amendment right to compulsory process "does not necessarily include the payment by the government of the expenses of witnesses" but leaves this matter to the discretion of the court. Feguer v. United States, 302 F.2d 214 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1968). Further, the initial question addressed to the petitioner was viewed as investigative and even if inadmissible "when viewed in the light of the evidence is clearly harmless," Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and finally the totality of the circumstances regarding the lineup procedure and identification were not so unfair as to be a denial of due process.

■ It is not the purpose of a habeas corpus proceeding to serve as an appeal from a criminal conviction. Errors or omissions in trial procedures are not to be fully reviewed on habeas corpus; only those errors constituting denial of federal constitutionally protected rights are justiciable (in a habeas proceeding contesting the legality of the detention). Atwell v. Arkansas, 426 F.2d 912, 915 (8th Cir. 1970); Durham v. Haynes, 368 F.2d 989 (8th Cir. 1966), cert. denied, 390 U.S. 959, 88 S.Ct. 1054, 19 L.Ed.2d

1154 (1968); Wilson v. Nebraska, 316 F.2d 84 (8th Cir. 1963).

Petitioner sought to advance in his state court trial the alleged defense of "involuntary intoxication." The trial court supplied the petitioner with counsel, with two examinations by state-employed psychiatrists and furnished expense money for petitioner's counsel to visit the Yankton State Hospital to investigate and discuss the matter of involuntary intoxication with the medical experts in that institution, but denied petitioner money to employ his own expert who allegedly for $50 would testify to the concept of "involuntary intoxication." The director of the Yankton State Hospital refused to allow petitioner's counsel to talk to the examining doctors because in his opinion there was no such condition or state as "involuntary intoxication." Copies of the examining physician's reports were made available to the petitioner and were filed in the case. Petitioner was advised by the trial court that he could call those physicians as witnesses, but petitioner did not see fit to do so.

■ Voluntary intoxication is not recognized as a defense in South Dakota, but may be shown to negative specific intent.[2] Petitioner claimed involuntary intoxication at his trial, but there was no claim that the intoxication was introduced in petitioner's system by force rather than the usual compulsion associated with alcoholic addiction. Petitioner testified he drank two to five beers at a number of different taverns in Sioux Falls the night of the armed robbery.

the police did not constitute custodial interrogation (the answers were exculpatory and were used for impeachment purposes at the trial); and that complaints about lack of counsel at the lineup identification did not constitute ground for relief since United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), were not to be retroactively applied. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. 8 S.D.C.L. § 22-5-5 (1967) provides as follows:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act."

After the robbery in Sioux Falls, South Dakota, law enforcement officers were alerted that a suspect might be driving a 1965 white Ford Mustang with California license plates. Such a car was stopped near Madison, South Dakota, and the officer asked the driver, who was the petitioner, if he had been in Sioux Falls. The answer, according to the police officer, was that he had just gone around the outskirts of Sioux Falls. At his trial petitioner denied making this statement and the police officer's testimony was used for impeachment purposes. No *Miranda* warnings were given. This was not a custodial interrogation according to the South Dakota Supreme Court but was merely a preliminary inquiry of a suspicious person. We think the South Dakota Supreme Court has fully and fairly considered this issue. The police in investigating a probable offense may ask preliminary questions on identification and the recent whereabouts of persons under suspicion in order to proceed with the investigation and quickly eliminate those who appear to be beyond suspicion. The police should be able to do this without accusing a person of committing a crime and thus possibly subjecting that person to an unfair accusation. And this type of questioning should be permitted without giving a recitation of the *Miranda* warnings.

Preliminary inquiry in the field is needed to immediately separate those individuals who by force of circumstances might give some indication of being connected with or having knowledge of an alleged offense from those who do not. The question asked did not seek to intimidate nor secure any admission or confession from the petitioner, but only sought to ascertain if further investigation should ensue. This was not a custodial interrogation. Also, under the recent case of Harris v. New York, 400 U.S. ——, 91 S.Ct. 643, 28 L.Ed.2d 1 (Feb. 24, 1971) any statement made by defendant that is inadmissible because of lack of procedural safeguards required by *Miranda* may be used for impeachment purposes if the trustworthiness of the statements satisfies legal standards. The answer given by petitioner in this case was only used for impeachment purposes after petitioner had testified in his own behalf.

Petitioner originally complained of lack of counsel at the time he was placed in the lineup and this alleged error was submitted to the state courts. However, since the lineup identification procedures announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are not retroactive, petitioner also contends the lineup procedures violated the "totality of circumstances concept" discussed in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Petitioner alleges he was subjected to two lineup procedures, both of which were held within a few minutes of each other. Two other individuals were in the lineup with the petitioner. The victim when first viewing the lineup, at a distance of 30 feet, did not identify the petitioner. After a short wait in the hall, the victim then viewed the lineup a few minutes later at a distance of three to four feet and identified the petitioner as the robber and also made identification at the trial. Petitioner also complains about the identification of the pistol used in the robbery. These are matters going to the weight and credibility of a witness and should be addressed to the trier of the facts.

There was nothing in the lineup "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to constitute a denial of due process. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The lineup of three persons was held within a few hours of the robbery, and was fairly constituted. Despite petitioner's claims, all of those in the lineup were approximately of the same height and similarly

dressed. The record rather convincingly shows the petitioner to be the perpetrator of the armed robbery which he first sought to excuse by claiming "involuntary intoxication." The petitioner testifying in his own behalf revealed that he had received an undesirable discharge from the Army because he drank too much, that he was twice convicted of a felony and was on parole at the time of this offense. He was also driving what was established to be the get-away car within hours after the armed robbery. A roll of bills of the same denominations as was taken in the armed robbery was in his pocket and a fully loaded .22 automatic with an additional clip and a box of shells was found in the console of the get-away car. The serial number on the gun had been filed off and the gun was identified as that used in the perpetration of the robbery. There appears to be no doubt that no error was made in identification either at the lineup or the trial. Any claimed irregularities in regard to the lineup were harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The order of the District Court dismissing petitioner's complaint for habeas corpus is affirmed.