**Arthur Lee TAYLOR, Petitioner,**

v.

**Harold R. SWENSON, Warden, Church Prison Farm, Jefferson City, Missouri, Respondent.**

**No. 18779–4.**

United States District Court,
W. D. Missouri, W. D.

June 4, 1971.

Ronald Sokol, Legal Aid & Defender Society of Greater Kansas City, Kansas City, Mo., for petitioner.

J. Michael Jarrard, Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ELMO B. HUNTER, District Judge.

Petitioner, a state prisoner who is currently confined in the Church Prison Farm at Jefferson City, Missouri, has filed in forma pauperis a petition for writ of habeas corpus challenging the validity of his state conviction and sentence. Leave to proceed in forma pauperis was granted by the Court in the order to show cause entered October 28, 1970.

On May 16, 1969, petitioner was sentenced by the Circuit Court of Jackson County, Missouri, to a term of five years imprisonment following a jury conviction upon charges of robbery in the first degree. Following that judgment of conviction and the imposition of sentence, petitioner took a direct appeal to the Supreme Court of Missouri. On appeal, the judgment of conviction was affirmed. See: State v. Taylor, 456 S. W.2d 9 (Mo.1970). Petitioner has filed no previous post-conviction motions with regard to this conviction and sentence.

In support of his application for federal habeas corpus relief, petitioner, in his initial petition, set forth the following legal and factual contentions:

"Movant was displayed in a tainted lineup without counsel in violation of rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"Failure of the trial court to hear the motion to suppress lineup identification outside the hearing of the jury denied movant an effective right of confrontation and thus denied him due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States.

"Movant, then a seventeen year old boy, was not accorded counsel during a three-man lineup in which he was identified. He purportedly signed a waiver of his right to counsel. Prior to the lineup, the victim had identified a photograph of movant as one of his assailants. Three persons exhibited in the lineup were of widely varying physical description, with movant the only person fitting generally a description of the assailant given at the crime scene or facially resembling the selected photograph."

From the records filed in this proceeding, including the official state report of petitioner's direct appeal to the Supreme Court of Missouri, it appears that petitioner has presented to the highest state appellate court the contentions he seeks to raise herein. And respondent concedes that petitioner has exhausted his adequate and available state post-conviction remedies with regard to the precise issues raised in this federal proceeding. Thus, it is clearly apparent that petitioner is entitled to a review by this Court to determine whether current federal standards were applied. See: Tyler v. Swenson, 440 F. 2d 621 (8th Cir. 1971); Edwards v. Swenson, 429 F.2d 1291 (8th Cir. 1970); Williams v. State of Missouri, 317 F. Supp. 338 (W.D.Mo.1970); Huffman v. State of Missouri, 313 F.Supp. 730 (W. D.Mo.1970); Dixon v. Missouri, 295 F. Supp. 170 (W.D.Mo.1969).

The state court record and the testimony and evidence adduced at the full evidentiary hearing held in this federal proceeding reveal the following factual background. On November 24, 1968, at approximately 6:45 a. m., James Frizzell, a Kansas City Transit Company bus driver, stopped his vehicle to allow two young Negro men to board it. At the

time, there were two other passengers in the bus. The first young man, who was later identified as the petitioner, pulled a gun from his jacket, stated that it was a holdup, and demanded Frizzell's money. In compliance with this and other demands of his assailant, Frizzell turned over all of the money contained in the changing machine of the bus in addition to some paper currency he had been keeping in his shirt pocket. During this encounter, Frizzell confronted the robber for approximately two to three minutes. After receiving the money, the robber backed out of the bus and ran down the street. Frizzell then drove a short distance down the street and called the police.

During the afternoon of the same day, Frizzell went to the police station. He was shown between one hundred fifty and two hundred photographs of young Caucasion and Negro males. Out of this volume of photographs and without suggestion from police officers, Frizzell identified petitioner as the person who had robbed him.

Later, on the evening of November 24th, Frizzell again returned to the police station to view a lineup. The lineup was comprised of three young Negro men of approximately the same age: the petitioner; a man slightly taller and heavier than the petitioner; and a man shorter and lighter than the petitioner. Each man in the lineup was wearing dissimilar clothing. Each was asked his name, address, height, and weight. From this lineup, Frizzell again identified petitioner as his assailant.

On March 31, 1969, immediately prior to petitioner's trial, a motion to suppress the in-court identification of petitioner by Frizzell was filed by petitioner's counsel. As grounds for that motion, counsel for the petitioner asserted (1) that the petitioner was displayed in the lineup without the assistance of counsel in violation of the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and (2) that the composition of the lineup was such as to violate peti-

tioner's constitutional rights. In the pre-trial conference held immediately before trial, over the objection of defense counsel, the state trial judge ruled that, with the exception of the testimony of the petitioner, he would hear the motion to suppress in connection with the trial of the case. Following the close of the State's case and outside the presence of the jury, the trial judge heard the testimony of the petitioner with regard to the lineup and oral argument in connection with the motion to suppress. The motion to suppress was overruled. During the trial of petitioner's case, Frizzell testified as to both the identification of the petitioner as his assailant and as to the lineup held on the day of the robbery.

■ As previously indicated, petitioner contends that the in-court identification by Frizzell was the product of a lineup which was violative of his constitutionally-protected rights because (1) he was not represented by an attorney at the lineup, and (2) the lineup in question was "unduly suggestive" in composition. Since testimony concerning the lineup was introduced at petitioner's trial, the lineup itself must be constitutionally valid even though there may exist an "independent basis" for the identification by Frizzell. Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Thus, the lineup in question must be viewed in light of both of the above contentions.

■ The infirmity in petitioner's contention that he was displayed at the lineup without the benefit of counsel is that the substantial and credible evidence adduced during the state proceedings and in the hearing in this proceeding shows that petitioner knowingly and voluntarily waived his right to counsel immediately before the lineup was conducted. In both proceedings, the State introduced into evidence a waiver of counsel form which had been signed by petitioner and which indicated his desire to waive counsel and to appear in the lineup. Further, in both state and federal proceedings, Richard James, the po-

lice officer who conducted the lineup, testified with regard to petitioner's waiver of counsel and the composition of the lineup itself. James testified that he conducted the lineup of November 24, 1968; that he signed the waiver of counsel form as a witness; that petitioner signed the waiver form in his presence; that, as a matter of standard procedure, the waiver of counsel form is given to a suspect just prior to a lineup; that the suspect is given the form in an adequately lighted room; that the suspect is always fully advised of his right to counsel before the waiver form is signed; that the suspect is always asked to read the waiver form before it is signed; that the waiver is fully explained before the form is signed; that the suspect is advised that he will be shown to an eye-witness; that the suspect is informed that he will be shown in connection with a specifically-designated crime; and that during a lineup the officer in charge attempts to use suspects who are similar in age, height, and weight. Additionally, James testified that he would not allow a suspect to sign the waiver form until it had been explained to the suspect and he had read it. Thus, in light of these circumstances and as found by the Supreme Court of Missouri, there can be little question that petitioner knowingly and voluntarily waived his right to counsel at the lineup after he had been fully advised of his right to counsel as enunciated in United States v. Wade, *supra,* and Gilbert v. California, *supra.* See: Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). As to burden of proof in "waiver" cases, see: Meller v. Swenson, 309 F.Supp. 519, 524–525 (W. D.Mo.1969), aff'd Meller v. State of Missouri, 431 F.2d 120, 121 (8th Cir. 1970).

■ Petitioner's contention that the lineup in which he was displayed was "unduly suggestive" so as to deprive him of his constitutional rights under the Fifth and Fourteenth Amendments is equally without merit. Under the doctrine announced in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L. Ed.2d 402 (1969), a lineup, as judged by the "totality of the circumstances," may be " 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law." See also: Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); United States v. Wade, *supra;* Gilbert v. California, *supra;* Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). However, as viewed against the "totality of the circumstances" of this particular case, it is clear that the lineup in question was not violative of petitioner's constitutional rights. Petitioner was shown in a lineup which was conducted on the evening of the robbery. The identifying witness had ample opportunity during the robbery to observe the robber and he testified that he was positive in his identification. In fact, the witness identified petitioner from a volume of photographs the afternoon of the same day. Petitioner was displayed along with two other men of the same race and approximately the same age. Although the members of the lineup were not similarly dressed, there is no indication from the record that the manner of dress aided the witness in his identification of petitioner as the assailant. Further, even though the height and weight of the members of the lineup varied slightly, the variance was not so great as to be "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, *supra,* 390 U.S. at 384, 88 S.Ct. at 971. See: Coleman v. Alabama, *supra.* Thus, in light of these and other circumstances, the lineup in issue was not fatally defective in composition. See, for example: Utsler v. Erickson, 440 F.2d 140 (8th Cir. 1971); Searles v. State of Minnesota, 428 F.2d 1188 (8th Cir. 1970); United States ex rel. Ford v. Pate, 425 F.2d 178 (7th Cir. 1970); Crummie v. Wainwright, 427 F.2d 135 (5th Cir. 1970);

Gallagher v. United States, 406 F.2d 102 (8th Cir. 1969).

 There remain petitioner's contentions regarding alleged procedural deficiencies in the state court proceeding with regard to his motion to suppress the in-court identification by Frizzell. Petitioner contends that the state trial judge committed error of constitutional proportion by hearing the motion to suppress in connection with the trial itself. It should be noted that the trial judge did not hear the testimony of petitioner regarding the lineup in the presence of the jury. The argument of counsel was also heard outside the presence of the jury. Although the better method in hearing motions to suppress concerning lineup procedures is to hold a preliminary pre-trial hearing, the actions of the trial judge here did not rise to error of a constitutional nature. See: Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L. Ed.2d 31 (1967). *Compare* United States v. McKenzie, 414 F.2d 808 (3rd Cir. 1969); United States v. Beard, 414 F.2d 1014 (3rd Cir. 1969), *with* United States ex rel. Phipps v. Follette, 428 F. 2d 912, at p. 913, n. 1 (2nd Cir. 1970). As stated by the Third Circuit Court of Appeals in United States v. McKenzie, *supra,* 414 F.2d at page 810:

> "[T]he choice between preliminary inquiry and cross-examination as the method to permit challenging the identification procedures should be determined by the district court under the circumstances of the individual case." See also: United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1967); Lugo v. Gladden, 382 F.2d 957 (9th Cir. 1967).

Thus, since the lineup procedures were constitutionally valid under the circumstances of this particular case, the admission of testimony relating to those lineup procedures constituted, at most, harmless error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). And, since the validity of those lineup procedures appears from the record, the failure of the state trial judge to make formal findings of fact

and conclusions of law does not constitute a violation of federally-protected rights. See: Simms v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

Accordingly, for the reasons stated above, the petition for writ of habeas corpus is hereby denied.

It is so ordered.